**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
CHIEF JUDGE LEWIS T. BABCOCK**

Civil Case No. 04-cv-02006-LTB-MEH

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

    Plaintiff,

v.

PUBLIC SERVICE COMPANY OF COLORADO d/b/a XCEL ENERGY, INC.,

    Defendant.

_____

**Order**
_____

    Defendant Public Service Company of Colorado ("Xcel") moves for summary judgment on the claim of gender-based employment discrimination brought by plaintiff Equal Employment Opportunity Commission ("EEOC"). For the reasons stated below Xcel's motion is DENIED.

**I. BACKGROUND**

    The EEOC, the federal agency charged with enforcing employment discrimination laws, brings a single claim of gender discrimination against Xcel on behalf of Michelle Jaramillo ("Jaramillo."). The EEOC alleges that Xcel failed to promote Jaramillo in violation of 42 U.S.C. § 2000e-2(a)(1).

    Jaramillo was first hired by Xcel in 1987. She was promoted several times and, starting in 1989, worked as a metrologist in Xcel's Metrology Lab at its Materials Distrbution Center in Henderson, Colorado. Employees in the Metrology Lab repair and calibrate electronic instruments and gas electronic instruments. In December 2001 Xcel announced an opening for a Senior Metrologist. Xcel advertised the position both internally and externally. Jaramillo applied.

According to Katherine Hellfritz, the Xcel official responsible for selecting the Senior Metrologist, Xcel used a two-phase hiring process. In the first phase, applicants were selected to be interviewed based on their resumes. The second phase consisted of a written test designed to assess the technical skills necessary for the job, and an oral interview with Hellfritz and another Xcel official, Paige Marrs. The oral interviews last forty five minutes to an hour, and consisted of questions designed to probe the candidate's capability in the eight areas Xcel identified as important for this position. These areas were: 1) technical orientation, 2) problem analysis and critical thinking, 3) Adaptability & Dealing with Ambiguity, 4) Continuous Learning, 5) Customer Focus, 6) Initiative & Risk Taking, 7) Results Driven and 8) Communication.

Fourteen applicants applied for the position. Eight candidates were interviewed, of whom three were internal and five external. Jaramillo was the only woman of these eight. In January of 2002 Xcel selected an outside male candidate, Jerry Gangl. Gangl lacked specific experience in the utility industry but had other experience in repairing and maintaining electronic instruments. Jaramillo scored well on the written test, but on the oral interview Hellfritz and Marrs scored Jaramillo considerably lower than Gangl, who received the highest score. Hellfritz states in her deposition that Gangl's superior performance in the oral interview was the sole basis for his selection over Jaramillo.

As the necessary first step in filing an anti-discrimination complaint, Jaramillo filed a complaint with the Civil Rights Division of the State of Colorado ("CRD"). Xcel responded to this complaint, stating that Jaramillo was not qualified for the Senior Metrologist position and denying that there was discrimination in the selection process. Geraldine Cook, the Xcel EEO specialist who wrote the response to the CRD, stated that Jaramillo was not qualified because she

lacked certain skills "required" for the senior metrologist position. These skills included "Programming Radian RS703A to watt/watt-hour metering standards, power analyzer test equipment, phase handle meters and AC harmonic power analyzer test equipment. . . Experience evaluating troubleshooting, calibrating or repairing Oscilloscopes, Relay Test Sets, Function Generators, Counters and Instrument Transformers. . . The skills to provide hardware and software support for Gas Meter Shop." Cook also stated in support of its decision not to promote Jaramillo that "when her supervisor offered to train her" on certain functions key to the Senior Metrologist position, "(Jaramillo) refused the training opportunities."

The EEOC brought this claim against Xcel on September 29, 2004. Xcel filed this motion for summary judgment February 15, 2006.

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). I shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Once a properly supported summary judgment motion is made, the opposing party must provide specific facts showing the existence of a genuine factual issue to be tried. *Otteson v. United States*, 622 F.2d 516, 519 (10th Cir. 1980); Fed. R. Civ. P. 56(e).

If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex v. Catrett,* 477 U.S. 317, 323 (1986). The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty*

*Lobby,* 477 U.S. 242, 250 (1986).

### III.  LEGAL FRAMEWORK FOR EMPLOYMENT DISCRIMINATION CLAIMS

Title VII gender discrimination claims follow the burden shifting framework established in *McDonnell-Douglass Corp. v. Green,* 411 U.S. 792 (1973). Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination by a preponderance of the evidence. *Equal Employment Opportunity Commission v. Horizon/CMS Healthcare Corporation,* 220 F.3d 1184, 1191 (10th Cir. 2000).  The defendant then bears the burden of producing a "legitimate, non discriminatory reason" for this employment decision. *Butler v. City of Prairie Village, Kansas,* 172 F.3d 736, 747 (10th Cir. 1999). If the defendant is able to articulate a valid reason, the plaintiff has the opportunity to prove that the defendant's stated reason "was in fact pretext." *Id.* at 748.

Pretext can be shown by "weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non discriminatory reasons." *Morgan v. Hilti*, *Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997). "Mere conjecture that the employer's explanation is pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Id.*   "Even though all doubts concerning pretext must be resolved in the plaintiff's favor, a plaintiff's allegations alone will not defeat summary judgement." *Id.* at 1324.

To demonstrate that the employer's proffered reason is pretext, the plaintiff does not have to prove that the employer acted illegally or in a discriminatory fashion. *Randle v. City of Aurora,* 69 F.3d 441, 451 (10th Cir. 1995). "[D]iscriminatory animus may be inferred from the

4

simple showing of pretext." *Id.* Accordingly, a plaintiff can defeat a motion for summary judgment solely by establishing a prima facie case and showing pretext.  *Id.*

## IV.  DISCUSSION

Xcel concedes, for the purpose of this motion, that the EEOC has made out a prima facie case of discrimination against Jaramillo. Similarly, there seems no dispute that Xcel's stated reason for not promoting Jaramillo – that she was not the best qualified candidate – is a valid, non-discriminatory reason. The question then reduces to whether the EEOC has raised a fact question to show that Xcel's stated reason for not promoting Jaramillo is pretextual.

The EEOC advances three principle arguments for pretext. First, the EEOC asserts that Jaramillo was more qualified than Gangl. The EEOC contends that Jaramillo had more industry experience, more experience within Xcel and more relevant technical experience. Even if true, and Xcel disputes these points, EEOC's arguments on the relative merits of Jaramillo and Gangl do not defeat summary judgment. Xcel's reasons for promoting Gangl over Jaramillo do not need to be "wise, fair or correct," as long as Xcel honestly believed them. *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1318 (10th Cir. 1999). Even evidence that Jaramillo is more qualified than Gangl does not show pretext. *See Branson v. Price River Coal Co.,* 853 F.2d 768, 772 (10th Cir. 1988).  The record contains no evidence to suggest that Xcel did not honestly believe that Gangl was better qualified.  The EEOC argues, in essence, that Xcel made the wrong choice in selecting Gangl over Jaramillo. But the "accuracy of an employer's assessment" is irrelevant to a pretext analysis. *Bullington,* 186 F.3d at 1318.  The EEOC's arguments on the qualifications of the candidates do not raise a fact issue to defeat summary judgement.

The EEOC next critiques Xcel's hiring process, arguing that it is subjective, since different

evaluators (in this case Hellfritz and Marrs) gave the same candidates different scores based on the same answers to the same questions; that the deciding official, Hellfritz, lacked the technical background to make an informed selection; that the raters inconsistently rated the candidate's responses, for example, holding against Jaramillo her need to consult operating manuals before repairing equipment, while rating this as a positive attribute for Gangl; and that the interview process placed a premium on qualifications only marginal to the position, such as communications skills. The EEOC also suggests that Marrs altered her ratings to favor Gangl.

None of these flaws in the process, even if true, raise a fact question regarding pretext. None of the criteria Xcel used in the interview are so "unrelated to legitimate business considerations" as to constitute pretext. *See Simms v. Oklahoma ex rel Dept. of Mental Health & Substance Abuse,* 165 F.3d 1321, 1330 (10th Cir. 1999). It is undisputed that Xcel followed its normal selection process, and minor discrepancies or irregularities do not create an inference of pretext when an employer follows its normal practices. *Id.* at 1329. The EEOC asserts that Marrs' alterations of her ratings for Gangl casts doubt on the equity of the entire process, because Marrs cannot recall, years later, why she made these changes. The mere fact that Marrs' score-sheets showed that she was equivocal about some ratings does not show pretext.

While subjective selection processes, like Xcel's interview process, can be evidence of pretext, the candidates here were screened initially by their resumes, and then selected through an interview and a written test. The interview here may have been subjective, because it used open ended questions and Marrs and Hellfritz scored the answers based on their opinions of the responses, but this is not the kind of standardless, undocumented and "wholly subjective" process that courts have found to show pretext. *See Garrett v. Hewlett Packard Co.,* 305 F.3d 1210,

6

1217-1218 (10th Cir. 2002) and *Plotke v. White,* 405 F.3d 1092, 1106 (10th Cir. 2005). Xcel's selection method was a standard company interview format, where the questions were directly related to the criteria in the job announcement, and two evaluators independently provided numeric scores. If this interview system is pretextual, simply because it is to some degree subjective, then any interview process must be similarly suspect. I do not believe that federal law requires such a radical and sweeping conclusion. *See Chapman v. AI Transport,* 229 F.3d 1012, 1034 (11th Cir. 2000).

     EEOC's third argument for pretext is more persuasive. The EEOC contends that Xcel has offered shifting, and inconsistent, rationales for not promoting Jaramillo. Xcel's response to the CRD stated that Jaramillo was not qualified to be a Senior Metrologist, and stated specifically that she lacked three specific technical qualifications. In fact, Jaramillo does have these qualifications, and Gangl lacks at least some of them. Xcel stated to the CRD that Jaramillo had refused training when it was offered to her, when in fact no relevant training program existed. Significantly, Hellfritz in her deposition states that the sole basis for not selecting Jaramillo was the interview, and Xcel has apparently dropped the other rationales Cook stated to the CRD.

     Xcel argues that these statements do not show pretext because Xcel has stated consistently at least one basis for Jaramillo's non-promotion, her poor interview performance. In general, an employee must show that each of an employer's stated reasons are pre-textual. *Tyler v. RE/MAX Mountain States, Inc.,* 232 F.3d 808, 814 (10th Cir. 2000). However, the Tenth Circuit has identified several circumstances where "Something less than total failure of the employer's defense" may defeat summary judgment. *Jaramillo v. Colorado Judicial Dept.,* 427 F.3d 1303, 1310 (10th Cir. 2005). These include, among others, where the extent or nature of the

pretext is so "fishy and suspicious" as to severely damage the employer's credibility, where the employer offers a "plethora of reasons" and the plaintiff undermines several of them, and where the plaintiff rebuts the employer's objective reasons and only subjective reasons remain. *Id.*

The present case fits these exceptions. The pretextual nature of Jaramillo's alleged lack of technical skills and failure to accept training is particularly severe because it is factually incorrect and because it is contradicted by the Xcel hiring official as a basis for the decision. Xcel initially offered three reasons for its action, and two have been irrefutably rebutted. The final basis for Xcel's decision, the interview, is subjective. While an interview process that involves some subjectivity is not inherently invalid, it is more plausible that a jury could find it suspect when an employer's objective reasons have been discredited. The situation might be different if Xcel had relied solely on its interview process and never offered other pretextual reasons, but under these circumstances summary judgment for Xcel is inappropriate.

Xcel argues that its statement to the CRD should be discounted because it was the work not of Hellfritz, the selecting official, but of Cook, who was not involved in the decision and did not consult sufficiently with Hellfritz before explaining this decision a year later. This argument amounts to little more than Xcel asserting that Hellfritz is a more credible witness than Cook. Credibility determinations are for a jury, and are not appropriate in a motion for summary judgment. More important, EEOC is not making claims against Hellfritz or Cook but against Xcel. There is nothing in the record to suggest that Cook was not speaking for Xcel when she responded to the CRD. The record contains nothing that corrects or explains Cook's statement except Xcel's lawyers' arguments, which are not evidence.

It is so Ordered that Xcel's motion for summary judgment (Docket # 47) is DENIED.

**DONE and ORDERED,** this ___4th___ day of May, 2006 at Denver, Colorado.

                                                 ___s/Lewis T. Babcock___
                                                 United States District Chief Judge